## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AMERICAN ALLIANCE FOR EQUAL RIGHTS**, 3571 Far West Blvd #17 Austin, TX 78731 *Plaintiff*, v. **JORGE ZAMANILLO**, in his official capacity as the Director of the National Museum of the American Latino, P.O. Box 37012 MRC 512 Washington DC 20560 and **CROSBY KEMPER**, in his official capacity as the Director of the Institute of Museum and Library Services, 955 L'Enfant Plaza North, SW, Suite 4000 Washington, D.C. 20024-2135. *Defendants*. | Case No. 1:24-cv-509 |

## VERIFIED COMPLAINT

1. The Smithsonian is the world's largest museum. Founded for "the increase and diffusion of knowledge," 20 U.S.C. §41, the Smithsonian has featured some of our Nation's most revered cultural artifacts, including the Star-Spangled Banner, the Wright Brothers' Flyer, and the Apollo 11 Command Module.

2. Beyond preserving some of the country's most cherished pieces, the Smithsonian long embodied our Nation's highest ideals. Since its incorporation in 1846, "[t]he Smithsonian's museums have always been open to anyone who wished to visit." Smithsonian Institutes Archives, *African American Groundbreakers at the Smithsonian* (archived Feb. 20, 2024), perma.cc/UG68-QYKA. While other institutions continued to discriminate, the Smithsonian integrated its "collections, administration, and research" years before D.C. and the States followed suit. *Id.*

3. Unfortunately, the Smithsonian has strayed from its commitment to racial neutrality. Recently, its National Museum of the American Latino launched an internship for "Latino museum leaders." Smithsonian, *Press Release* (Mar. 1, 2023), perma.cc/L9UW-V3BT. When considering applications and hiring interns, the Museum has promised to "focus on … increasing the representation of Latina and Latino museum professionals in the field." *Latino Museum Studies Program* (archived Feb. 15, 2024), perma.cc/6XQP-8U6P. And the Museum has delivered. Two years into the program, the Museum has *never* hired an intern who identified as non-Latino.

4. The Constitution, however, forbids "'discrimination … against any citizen because of his race'" or ethnicity. *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954). The Supreme Court reaffirmed that rule just last term, holding that the guarantee of equal protection "is universal in its application." *SFFA v. Harvard*, 600 U.S. 181, 207 (2023) (cleaned up). "Eliminating racial discrimination," *Harvard* implores, "means eliminating all of it." *Id.*

5. The Museum's internship flouts that rule. Its consideration of race and ethnicity harms Americans, like Plaintiff's members, who want to participate but have the wrong DNA. It should be declared unlawful and enjoined.

## PARTIES

6. The American Alliance for Equal Rights is a nationwide membership organization that is dedicated to ending all classifications and preferences based on race and ethnicity. The Alliance was founded in 2021. It was approved by the IRS as a 501(c)(3) tax-exempt organization the same year. Edward Blum is the Alliance's president; Richard Fisher is its treasurer; and Wai Wah Chin is its secretary.

7. The Alliance has nearly 200 members, and its membership continues to grow. The Alliance's members are actively involved in the organization and its affairs. Members voluntarily join

the Alliance. They pay dues. They receive regular updates. And they offer input on the Alliance's litigation and other activities.

8. The Alliance has members who are ready and able to apply for the Museum's internship program, for which the next application window closes on April 1, 2024.

9. Crosby Kemper is the Director of the Institute of Museum and Library Services, a Senate-confirmed official. *Office of the Director* (archived Feb. 14, 2024), perma.cc/KU43-HVVC. The Institute is "an independent government agency" that is "the primary source of federal support for the nation's museums and libraries." *Id.* Under the National Museum of the American Latino Act, the Director must "establish and carry out … a grant program with the purpose of providing internship and fellowship opportunities," including the internship challenged here. 20 U.S.C. §80u(f)(2)(A)(ii). The Alliance is suing Kemper in his official capacity.

10. Jorge Zamanillo is the Director of the Museum. The Director "manage[s] the Museum," including the internship challenged here. 20 U.S.C. §80u(e)(1)(B); *see also* §80u(f)(1)(A), (B). The Director can "carry out educational and liaison programs," including "educational programs" like the internship. §80u(f)(1)(A); *see also* §80u(f)(1)(B)(i)(II). The Alliance is suing Zamanillo in his official capacity.

## JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction under 28 U.S.C. §1331 because this case "arise[s] under the Constitution."

12. Venue is proper under 28 U.S.C. §1391 because Defendants "resid[e]" in D.C. and "a substantial part of the events" occurred here.

## FACTS
**A. The Museum's internship discriminates based on race and ethnicity.**

13. In 2020, Congress created the Museum, which is "within the Smithsonian Institution." 20 U.S.C. §80u(c)(1). By statute, the Museum must "provid[e] internship and fellowship opportunities." §80u(f)(2)(A)(ii); *see also* §80u(f)(1)(A)-(B) (requiring the Director to "carry out" undergraduate "educational programs"). Roughly a year after Congress created the Museum, the internship challenged here was "launched." *Press Release.*

14. The internship is a full-time, 12-week program that occurs once a year. *Latino Museum Studies Program Undergraduate Internship* (archived Feb. 15, 2024), perma.cc/RPF8-FRY2. It provides participants with "Lectures, workshops, and behind-the-scenes tours." *Id.* Interns receive an array of individualized programming, including team-building exercises, classes, and "focused mentorship." *Id.* Throughout their semester at the Museum, each intern creates a customized project—called a "practicum"—that aligns with their "background," "experience," and "future goals." *Id.* Throughout the practicum, interns receive personalized "mentorship from their practicum supervisors." *Id.* Interns also receive a "$533 weekly stipend," free "accommodations," and "[r]ound-trip travel to Washington, D.C." *Id.*

15. The internship is not equally open to non-Latinos. In the very first sentence of the job description, the Museum states that the internship is "designed to increase hands-on training opportunities for Latina, Latino, and Latinx-identifying undergraduate students." *Id.* "The program," according to the Museum, "seeks to catalyze change in a field where only 5% of key museum positions are filled by people who identify as Latina, Latino, or Latinx." *Id.* And the internship will "change [that] field" by "increasing the representation of Latina and Latino museum professionals." *Latino Museum Studies Program*; *see also Latino Museum Studies Program Undergraduate Internship* (same).

16. The internship's application is designed to carry out this pro-Latino discrimination. In a document titled "Program Specific Information/Requirements," the Smithsonian includes several

"Program Applicant Questions." The first reads: "The applicant is requested to answer the following questions: (For purposes of programmatic diversity only): Do you consider yourself as part of a Latino/Hispanic subgroup? If so, which?" Applicants also must complete an essay that encourages them to discuss "your identities." Smithsonian, *Latino Museum Studies Program Undergraduate Internship Application Materials* (archived Feb. 22, 2024), perma.cc/26TY-5CUY. And their essay can be shorter if they send a "video" of themselves. *Id.* Interns are selected by an "independent selection committee." *Latino Museum Studies Program Undergraduate Internship.*

17. Statements by the Museum's key staff—including the Museum's Deputy Director, who "serve[s] under the Director," 20 U.S.C. §80u(e)(2)—confirm that the internship discriminates against non-Latinos. As the Deputy Director recently observed, the internship "is designed to prepare the next generation of Latino museum leaders with the skills, insights and networks they need to succeed." *Press Release.* It is meant to "build a diverse museum workforce." *Id.* And it is "an opportunity for [the Museum] to work with young Latinas and Latinos." State Press, *ASU Partners With Smithsonian to Increase Number of Latinx Museum Professionals* (Oct. 31, 2022), perma.cc/7574-TF73. Marcus Voss, the internship's "program lead" at Arizona State University, echoed the Deputy Director's sentiments, stating that "the Smithsonian Latino Museum Studies Program … ensures viable career pathways for our Latinx students.'" *8 ASU Undergrads Headed to DC for Smithsonian's Latino Museum Studies Program.*

18. The Smithsonian Institution—the federal agency that oversees the Museum, 20 U.S.C. §80u(c)(1)—has made similar observations about the internship. The "Undergraduate Internship," the Smithsonian has said, "seeks to increase access to art museum career pathways for Latinx-identifying undergraduate students." Smithsonian – Office of Internship Programs, *Latino Museum Studies Program Undergraduate Internship* (archived Feb. 21, 2024), perma.cc/5KJ9-T4HQ. It is designed to "foster future generations of Latino museum professionals." Smithsonian, *Smithsonian Program Fosters*

*New Generation of Latino Museum Professionals* (July 27, 2017), perma.cc/3BCS-Q6FH. And the Museum's internship accomplishes that task by "seek[ing] to boost the representation of Latinos in the museum field" and by "increas[ing] Latino representation in museum professions." *Press Release.*

19. The White House has made similar remarks. "The Latino Museum Studies Program," it recently explained, hopes to "change a field where only 5% of key museum positions are filled by people who identify as Latina, Latino, or Latinx." White House Initiative on Advancing Educational Equity, Excellence, and Economic Opportunity for Hispanics, *Smithsonian's National Museum of the American Latino's Latino Museum Studies Program Undergraduate Internship* (Apr. 7, 2023), perma.cc/JW4F-27UQ. And the internship will "change [that] field" by "increas[ing] hands-on training opportunities for Latina, Latino, and Latinx-identifying undergraduate students." *Id.*

20. Third parties, too, have recognized the internship for what it is: a race-based program. "The Smithsonian Latino Museum Studies Program Undergraduate Internship is available to undergraduate students who identify as Latina/o/x," one website observes. FastWeb, *Smithsonian Latino Museum Studies Program Undergraduate Internship* (archived Feb. 16, 2024), perma.cc/P8RL-ZVCF. The internship "provides opportunities for Latinx students to find a career within the museum industry," another newspaper explains. *ASU Partners With Smithsonian to Increase Number of Latinx Museum Professionals.* And the internship offers "a chance for Hispanic students" to "wor[k] at some of the world's most famous museums," a third publication notes. ABC 15 News, *ASU Starts Partnership with Smithsonian to Get More Latino Representation in Museums* (Oct. 11, 2022), perma.cc/S5RN-BMT8. The internship's aim is simple: "get more Latino representation." *Id.*

21. The Museum's practices confirm this fact. Since the internship started, the Museum has hired two classes of interns: one in 2022 and another in 2023. In both years, not a single intern identified as black, Asian, or white. During the same two-year window, at least 25 interns—nearly 90% of participants—self-identified as Latino. No intern identified as non-Latino.

22. In 2023, the Museum hired 15 interns. Of them, ten identify as Latino. *E.g.*, *Meet our Undergrad 2023 LMSP Cohort* (archived Feb. 16, 2024), perma.cc/7XDY-BHQ6 (Julyet Carrillo self-identifying as "a Latina woman"); *id.* (Carolina Carret discussing "her heritage [as] Cuban and Caribbean"); *id.* (Cheyenne Díaz suggesting she is "Latinx"); *id.* (Lesley Mendoza-Serrano suggesting she is "Latino"); *id.* (Finn Miller suggesting he is "Latin"); *LinkedIn Post* (archived Feb. 16, 2024), perma.cc/TP2N-EBF6 (Sebastian Saavedra self-identifying as a "Latino student"); *Annual Meeting New England Council of Latin American Studies* (archived Feb. 16, 2024), perma.cc/YV6B-PKEA (Mimi Diaz-Salgado self-identifying as "Latinx"); *8 ASU Undergrads Headed to DC for Smithsonian's Latino Museum Studies Program* (suggesting Ambar Dominguez self-identifies as "Latinx"); *id.* (suggesting Katrina Hernández self-identifies as "Latinx"); *LinkedIn Post* (archived Feb. 16, 2024), perma.cc/Y49L-3FXT (suggesting Claudia González is "Hispanic [or] Latino american").

23. The remaining interns—Luiza Serradilha, Joharis Ramos Abreu, Michaela Morales, Joshua Mondragon, and Olivia Z. Joseph—do not publicly identify their race or ethnicity. *Meet Our Undergrad 2023 LMSP Cohort*.

24. Similarly, in 2022, the Museum hired fifteen interns. All identify as Latino. *E.g.*, *8 ASU Undergrads Headed to DC for Smithsonian's Latino Museum Studies Program* (Museum's "program lead" noting that "8 ASU undergrads" participated in the 2022 internship, which was "for our Latinx students"); Las Cruces Sun News, *NMSU's First Cohort Heads to Smithsonian for Internships* (Sept. 3, 2022), perma.cc/L9RA-T4Q8 (similar observations for the four New Mexico State University students who attended the 2022 internship); FastWeb, *Smithsonian Latino Museum Studies Program Undergraduate Internship* (same for the students from the University of Texas at El Paso and the City College of New York).

25. The internship thus outright requires, or at a minimum strongly prefers, interns to be Latino.

26. Other than race, applicants must satisfy two "requirements." *Latino Museum Studies Program Undergraduate Internship*. They must be enrolled at an "accredited" United States college or university "at the time of application." *Id.* And they must "be authorized to work in the United States." *Id.*

### B. The Museum's internship injures the Alliance's members.

27. The Alliance has members who are being harmed by the Museum's racially discriminatory internship, including Member A.

28. Member A is a member of the Alliance. Member A pays dues, believes in the Alliance's mission, and supports this lawsuit.

29. Member A is currently pseudonymous because she fears that the Museum will hold her involvement in this lawsuit against her when selecting interns. Member A also fears reprisal from classmates, professors, fellow applicants, the media, and the public for joining the Alliance and publicly opposing racial preferences.

30. Member A is interested in the internship for several reasons. She likes art, museums, and history. She would enjoy spending time in Washington, D.C. and promoting the Museum. She finds the internship's stipend attractive. And she believes that working for the Museum would bolster her resume, increase her chances of attending a good graduate school, and unlock other prestigious professional opportunities.

31. Member A satisfies all the internship's requirements, except she is not Latino. She considers herself biracial (her mother is white and her father is black).

32. Member A is enrolled at an accredited university in the Midwest, where she is a junior. She is authorized to work in the United States.

33. Member A is well suited for the internship. She enjoys public speaking and presenting. She is dedicated to the arts, both at her school and in the broader community. She is part of her

school's ensemble, orchestral, and band programs, where she received a coveted scholarship for her musical performance. She is a teaching assistant in several classes, president of a student organization, and the winner of international writing awards. Member A is also the media content creator at a local business. She previously applied for, and was accepted into, an internship for digital marketing. Her undergraduate major—marketing, with an emphasis in legal studies—is like majors that the Museum has considered in the past. *E.g.*, *Meet Our Undergrad 2023 LMSP Cohort* ("Legal Studies" and "Justice" majors).

34. Member A is ready and able to apply for the Museum's internship program, but she cannot apply on a race-neutral playing field because she is not Latino. And because the Museum hires only Latino interns, Member A cannot apply at all.

35. Member A is ready and able to apply—and submit a resume, transcript, reference letter, personal statement, and all other required information—for the upcoming cycle or the next one, once a court orders the Museum to conduct the internship in a race-blind manner.

## CLAIM FOR RELIEF
### Violation of the Fifth Amendment

36. Plaintiff incorporates and restates all its prior allegations.

37. The Fifth Amendment contains an equal-protection guarantee that binds the federal government. *E.g.*, *Gibson v. Mississippi*, 162 U.S. 565, 591 (1896); *Bolling v. Sharpe*, 347 U.S. 497, 499-500 (1954); *MD/DC/DE Broadcasters Ass'n v. F.C.C.*, 236 F.3d 13, 20 (D.C. Cir. 2001).

38. The Fifth Amendment's equal-protection guarantee is just as strict as the Fourteenth Amendment's Equal Protection Clause. *Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 224 (1995). So "*any* person, of whatever race, has the right to demand that *any* governmental actor subject to the Constitution justify *any* racial classification subjecting that person to unequal treatment under the strictest judicial scrutiny." *Id.* (emphases added); *accord Broadcasters Ass'n*, 236 F.3d at 20.

39. That command stems not only from the Fifth Amendment's guarantee of equal-protection, but also from the Fourteenth Amendment's guarantee of equal citizenship, the Constitution's limits on federal power, and the bedrock principles of equality laid out in the Declaration of Independence. *E.g.*, *Bolling*, 347 U.S. at 499-500; *Adarand*, 515 U.S. at 227; *United States v. Vaello Madero*, 596 U.S. 159, 171-80 (2022) (Thomas, J., concurring).

40. Because the Museum's internship program racially discriminates, it must satisfy strict scrutiny. *Adarand*, 515 U.S. at 224; *Broadcasters Ass'n*, 236 F.3d at 20. It must employ measures that are "narrowly tailored" to "further compelling governmental interests." *Harvard*, 600 U.S. at 206-07. The Museum's overt racial preferences fall far short of that high bar.

41. The Supreme Court recognizes "only two compelling interests that permit resort to race-based government action." *Harvard*, 600 U.S. at 207. The first is "remediating specific, identified instances of past discrimination." *Id.* The second is "avoiding imminent and serious risks to human safety in prisons." *Id.* The Museum isn't a prison. And it does not claim to be remediating any specific instances of past discrimination.

42. While the program's stated goal is to "increas[e] the representation of Latina and Latino museum professionals," *Latino Museum Studies Program*, that goal is just racial balancing, which is "'patently unconstitutional,'" *Harvard*, 600 U.S. at 221-23. People are individuals, not members of racial groups who are "represented" by other people who share their ethnicity.

43. Nor is hiring 15 Latinos for a summer internship narrowly tailored to the Museum's stated goal. There is no connection between this number, or even the internship itself, and the overall representation of Latinos among museum professionals. Any benefits could be achieved about as well with race-neutral alternatives, which the Museum has never considered and convincingly rejected.

44. By barring all non-Latinos from the internship, the internship imposes an illegal "quota," which "cannot be said to be narrowly tailored" to any permissible goal. *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 507 (1989); *accord Hammon v. Barry*, 826 F.2d 73, 79 (D.C. Cir. 1987). Even if the program merely preferred Latinos, that racial preference would be just as illegal. *Lutheran Church-Missouri Synod v. FCC*, 141 F.3d 344, 354 (D.C. Cir. 1998). The internship, at a minimum, uses ethnicity as a negative for non-Latinos by treating that trait—in a competitive admissions process for only 15 internships—as a positive only for Latinos. *Harvard*, 600 U.S. at 218-19; *see also* Smithsonian, *Internships and Fellowships Frequently Asked Questions* (archived Feb. 21, 2024), perma.cc/B5QW-CLYU ("Smithsonian internships and fellowships are very competitive; the Smithsonian receives thousands of applications each year.").

45. The internship also impermissibly stereotypes. *Harvard*, 600 U.S. at 213. The Museum "engages in the offensive and demeaning assumption" that Latino candidates can best transmit Latino art and history—not because they necessarily have a deeper knowledge of Latino art, history, or culture, but because of their ethnicity. *Id.* at 220-21. This type of race essentialism—assuming a South Dakotan with one Latino grandparent knows more about Latino history than an African American who grew up in Honduras—flouts strict scrutiny.

46. Nor does the internship's racial consideration have an end point. *Id.* at 228. The Museum has no sunset date, or even an idea of when its goals might be met and its use of race "can end." *Id.* at 225. And by "focus[ing] on … increasing the representation of Latina and Latino museum professionals," the internship promises to use race and ethnicity in perpetuity. *Latino Museum Studies Program*. Like all labor markets, the demographics of museum professionals will always change. "By promising to terminate [the] use of race only when some rough percentage of various racial groups is admitted," the Museum "effectively assure[s] that race will always be relevant." *Harvard*, 600 U.S.

at 223 (cleaned up). Equal protection does not tolerate that choice. *Id.* at 221-24; *accord O'Donnell Const. Co. v. D.C.*, 963 F.2d 420, 428 (D.C. Cir. 1992).

## PRAYER FOR RELIEF

47. This Court should enter judgment in the Alliance's favor and against Defendants. It should provide the following relief:

   A. A declaratory judgment that the internship violates the Constitution's equal-protection principle.

   B. A temporary restraining order and preliminary injunction barring Defendants from closing the current application window, selecting interns, or considering an applicant's race or ethnicity when selecting interns.

   C. A permanent injunction barring Defendants from knowing or considering an applicant's race or ethnicity when selecting interns.

   D. Reasonable costs and expenses of this action, including attorneys' fees.

   E. All other relief that the Alliance is entitled to.

Dated: February 22, 2024

Adam K. Mortara*
  (TN Bar No. 40089)
LAWFAIR LLC
40 Burton Hills Blvd., Ste. 200
Nashville, TN 37215
(773) 750-7154
mortara@lawfairllc.com

Respectfully submitted,

*/s/ Cameron T. Norris*
Thomas R. McCarthy
  (D.D.C. No. 489651)
Cameron T. Norris
  (D.D.C. No. VA083)
  *Lead Counsel*
Gilbert C. Dickey
  (D.D.C. Bar No. 62954)
R. Gabriel Anderson*
  (TX Bar No. 24129302)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
cam@consovoymccarthy.com
gilbert@consovoymccarthy.com
gabe@consovoymccarthy.com

*pro hac vice forthcoming

## VERIFICATION

I, Edward Blum, declare as follows:

1. I am the President of the American Alliance for Equal Rights, the plaintiff here.

2. I have reviewed this complaint.

3. For the allegations within my personal knowledge, I believe them all to be true.

4. For the allegations not within my personal knowledge, I believe them all to be true based on my review of the cited policies and documents and based on conversations with members of the American Alliance for Equal Rights, including Member A.

5. I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 22, 2024

_____
Edward Blum
President of American Alliance for Equal Rights